CASE 17.—ACTION BY OWEN CURD AGAINST THE CINCIN-
NATI, NEW ORLEANS & TEXAS PACIFIC RAIL-
WAY COMPANY AND OTHERS, FOR DAMAGES FOR
PERSONAL INJURIES.   Oct. 12, 1905.

# Cincinnati N. O. & T. P. Ry. Co. v. Curd

Appeal from Mercer Circuit Court.

W. C. Bell, Circuit Judge.

Judgment for plaintiff, defendant railway company
appeals—Affirmed.

1. Master and Servant—Fellow Servants—Vice Principal.—A
conductor in charge of a freight train backed his
train onto a siding with such force as to throw
a heavy casting from a car, which was standing
on the siding and which was struck by the freight
train onto the main track, where it was struck by a passenger
train, which it wrecked, thereby injuring the fireman of such
passenger train. A rule of the railroad required employes in
charge of trains to promptly report to the superintendent any
incident involving the obstruction of the road, to repair dam-
ages and take entire charge of necessary work, and to first
protect the train with proper danger signals, and take every
precaution to prevent further accident. Held, that, under the
laws of Tennessee the crews of the freight and passenger
trains were fellow servants up to the time when the casting
was thrown upon the main track, but from that time until
the time when the passenger train was wrecked the con-
ductor of the freight train was, by virtue of the railroad's rule,
a vice principal, whose duty it was, as a representative of
the railroad, to remove the obstruction from the main track
and to warn the approaching passenger train for its pro-
tection.

2. Same—Proximate Cause.—The negligence of the conductor,
when acting as a vice principal, was the proximate cause of
the injury to the fireman.

3. Removal of Causes—Unauthorized Removal—Effect of Filing
Record.—Where the State court refused to remove a cause to
the Federal Court, defendant's act in having the record copied
and filing the same with the clerk of the Federal Court did
not carry the case into the Federal Court in such sense as
to render it a pending action there.

4. Master and Servant—Injuries to Servant—Evidence—Rules of
Master.—In an action against a railroad for injuries to a

fireman on a passenger locomotive, caused by the negligence
of a freight conductor in recklessly backing his train onto a
siding and causing a heavy casting to be thrown onto the
main track, where it was struck by the passenger locomotive,
a rule of the railroad requiring employes in charge of trains
to report obstructions of the road to the superintendent, to
repair damages, to take charge of necessary work, and to
protect the train and prevent further accident, was properly
admitted in evidence.

5.  Damages—Excessiveness—Personal Injuries.—A railroad fire-
man, 33 years of age, and enjoying robust health, was in-
jured in a wreck. He was rendered unconscious for 10 hours,
his head was split open, his right arm was broken, his back
was burned in four places, his left leg was punctured, and the
muscles thereof torn. There were further injuries to his
ears, nose, and face. He lost the use of his right arm, his
spine was permanently injured, he was unable to turn his
head independently of his body, was unable to control the
action of his kidneys, was reduced in weight 30 pounds, and
was rendered unable to perform manual labor. Held, that a
verdict for $11,000 was not excesesive.

6.  Trial—Instructions—Refusal of Requests—Instructions Al-
ready Given.—Requested instructions are properly refused,
where all that is proper in them is embodied in instructions
given.

E. H. GAITHER and GALVIN & GALVIN, for appellant.

ROBT. HARDING, DENTON & ROBINSON, E. M. HARDIN
and GREENE AND VAN WINKLE, for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

In September, 1903, the appellee, Owen Curd, filed
his petition against appellant and the trustees of the
Cincinnati Southern Railway Company, and against
Eli J. Shipp, conductor, and William Crissman, engi-
neer, on a freight train, for damages for personal in-
juries, alleging joint gross negligence of the defend-
ants. Previous to the filing of this suit the appellee
had filed a suit for the same cause of action in al-
most the same words, making the same parties de-
fendants with the exception of Shipp. To this first
petition the appellant and its codefendants, trustees
of the Cincinnati Southern Railway, filed a petition
for removal to the Federal court as nonresident de-
fendants, executing bond with sufficient surety, ap-

proved by the court. The court overruled the petition for removal; but, notwithstanding this action of the court, the record, properly certified, was carried by the appellant to the Federal court, and was at the time of the filing of this petition, in September, 1903, pending in the Federal court, and is still pending. The petition in the State court, however, was, after the filing of the petition in September, 1903, dismissed without prejudice. A petition for removal of the second suit, with bond as required by law, was filed by the appellant and the trustees of the Cincinnati Southern Railway, but was overruled. Demurrers to the petition being overruled, each of the defendants answered separately. The answer of the appellant pleaded, first, to the jurisdiction of the court; second, a traverse of the plaintiff's petition; third, that the injury occurred wholly within the State of Tennessee, and that the accident was caused by the acts of the fellow servants of the plaintiff under the laws of the State of Tennessee; fourth, that there was then pending in the United States Court for the Eastern District of Kentucky, between the appellee and the appellant, an action involving the same subject-matter involved in this action. The appellee filed a reply, traversing the affirmative matter in the answer. The cause was tried at the February, 1904, term, and resulted in a verdict of $11,000 against the appellant and Shipp and Crissman. Motion and grounds for a new trial were overruled, and the appellant alone appeals.

The appellant relied upon many grounds for a new trial in the court below, but insists upon the following grounds only for a reversal in this court: First, that by the laws of Tennessee Shipp and Crissman, whose negligence it is contended caused the accident, were the fellow servants of the appellee, Owen Curd, and that the appellant was not responsible to the appellee for the acts of the fellow servants; second, that under the proof the appellant was entitled to a peremptory instruction ,the negligent act charged and

the resulting injury being too remote to hold appellant liable therefor; third, that, the same action being then pending in the United States Court, the Mercer Circuit Court had no jurisdiction of the action; fourth, that the court admitted improper testimony; fifth, the verdict is excessive. The facts of the case are about as follows: The appellee was a fireman upon the appellant's road, and at the time of the injury complained of in his petition was firing upon a locomotive attached to a passenger train. His run was from Somerset, Ky., to Chattanooga, Tenn. There is on the road over which he passed, in Tennessee, a small station known as Sunbright, and at the time of the occurrence there had been left standing upon the siding at this station a number of freight cars. Upon one of these cars, a flat car, there was a heavy casting, weighing about 3,000 pounds. The train upon which Curd was firing was due at Sunbright a little before 5 o'clock in the morning, which at that season of the year—December—was before daylight. His train was headed south. A freight train, the same upon which Shipp and Crissman were the conductor and engineer, was going north, and took the siding on the time of the passenger at this station. This siding was about 800 yards long; the north end of it being at the depot. Instead of entering the siding from the south end, they passed up the main track and backed in on the siding and ran in with such reckless speed that this freight train struck the standing cars on the siding with such force as to derail one of the loaded cars in the freight train and break this flat car, on which was located the casting, throwing it off about twelve feet, onto or near the main track. About fifteen or twenty minutes after this the passenger train, upon which appellee was situated, came along, running at the rate of about fifty or sixty miles an hour. The locomotive struck the casting and wrecked the passenger train, and appellee was thrown from the locomotive and severely

injured. The wrecking of this train was due alone to the negligence of the appellant company and the conductor and engineer of the company's north-bound freight train, who caused this obstruction of the main track, and suffered and permitted it to remain obstructed with this large piece of machinery without giving any notice or warning to the fast south-bound passenger train, which they knew was due to come south over the main track at the time and before they obstructed this track with this machinery. It is conceded that under the law of the State of Kentucky, under the facts established, the appellant would be liable to the appellee for his injury. As stated, the appellant pleaded in the lower court that the common law of the State of Tennessee, as construed by the courts of that State, governed and controlled this case. Admitting, for the purposes of this action, that this is true, we will proceed upon this assumption.

Appellant's contention is that appellee's injuries were received by reason of the wrongful acts and negligence of the crew in charge of the freight train, and that every member of that crew, including the conductor, was the fellow servant of the appellee, and for that reason the company, the master, is not responsible in damages, and that, when appellee undertook to serve the appellant as employe, he assumed all such risks. To substantiate this claim, the appellant took the deposition of two eminent lawyers of the State of Tennessee and put to each of them a hypothetical question. In answer to this, they each stated in substance that they were clearly of the opinion that the appellee and the other members of his own crew, and those of the freight crew, were all fellow servants, and that the appellant was not responsible to the appellee for his injuries. They both, however, stated that the courts of Tennessee had made some exceptions to the common-law rule. On the cross-examination some of these exceptions

were elicited. The following question was put to one of the witnesses, Judge Estill: "Under the state of facts as given in the hypothetical question of Col. Gaither (attorney for appellant) in your direct examination, I will ask you if there is any member of either of the crews who would not be a fellow servant of the fireman on the passenger train." His answer was as follows: "The members of both crews were all fellow servants, unless it was the duty of some one of the crew on one of the trains, or both, of them, to see that the track was kept clear; that is to say, unless it should appear it was the duty of some one or more of the members of these crews to look after the condition of the track, and to see that it was kept clear of obstructions. In the performance of a number of duties devolving on the conductor of the train, as, for instance, the taking of train orders and looking to the movement of his trains, so as to prevent collisions with other trains, the conductor of either a passenger or a freight train stands in the relation of vice principal to brakemen and firemen; but the mere fact that an injury results from the negligence of the conductor does not necessarily charge the railroad company, unless the conductor stood in the place of the railroad company with reference to the particular matter. In other words, the mere fact that an injury results from the negligence of the servant superior in rank to the injured servant, does not render the master liable; but, in order to charge the master with such negligence, the superior servant must so far stand in the place of the master as to be charged in the particular matter with the performance of the duty toward the inferior servant, which under the law the master owes that servant. If it is no part of the duty of the conductor, or any other member of either crew, to look after the condition of the railroad track, then the mere fact that the conductor or other members of the crew that stood in the relation of vice principal may have seen the obstruction on the track and did not remove it

would be regarded as the personal, and not the official, negligence of such employe. This distinction is very clearly pointed out in the case of Allen v. Goodwin (21 S. W. 760), before referred to. Of course, if it should be made to appear by proof that it was the duty of any member of either crew, other than the injured fireman, to look after the condition of the track, and they negligently failed to do so, this would be official negligence of the vice principal, and the railroad company would be responsible. In other words, the doctrine of respondeat superior would apply." This question was also asked him: "Under the hypothetical question stated by Col. Gaither, if the company delegated to the engineer or the conductor the duty to keep the track unobstructed, if any obstruction occurred, would not the company be responsible, on the ground that the engineer or conductor was vice principal?" He answered as follows: "If the company instructed any employe, who was a member of either of these crews, to keep the track clear of obstructions, and the employe so instructed negligently failed to remove an obstruction from the track, and the injured fireman was himself, at the time he received the injury, in the exercise of a reasonable care and prudence, he would be entitled to recover. In the case you state in your question, coupled with the hypothetical question stated in the direct examination, the engineer or conductor would occupy the position of a vice principal; that is to say, he would be in the performance of a duty which the master owed the servant, and if he was negligent in its performance the doctrine of respondeat superior would apply."

Appellee introduced as evidence a rule taken from one of appellant's books of rules given to those of its employes in charge of trains. This rule is as follows: "Should an accident occur involving the loss of life, serious injury of person, damage to prop-

Cincinnati, N. O. & T. P. Ry. Co. v. Curd.

erty, or the obstruction of the road, or whenever the road is found impassable or unsafe from any cause, or whenever there is any unusual delay, report to the superintendent by telegraph as soon as possible, giv-ing all information necessary to a clear understand-ing of the case and what help is required.   Take prompt and efficient measures to prevent excitement and needless alarm, and to repair damages and for-ward passengers to their destination with the least possible delay.   In the absence of the superintendent or other officer, take entire charge of all work neces-sary to be done and of all employes that can be spared to render assistance.   First protect the train with the proper danger signals, be sure that every pos-sible precaution is taken to prevent further accident, and get word as quickly as possible to the superin-tendent or heads of departments.''   This was under the head of rules for conductors.   We are of the opinion that, under the laws of the State of Tennes-see as proven, the crews of both of these trains were fellow servants up to the moment when the freight train was wrecked and this heavy iron casting was thrown upon the main track.   But from that moment to the time when the passenger train was wrecked, which was about fifteen or twenty minutes after, Shipp, the conductor of the freight train, by reason of the rule referred to, was the vice principal, and stood in the place of the appellant, and it was made his duty to command the services of all the other mem-bers of the crew to ascertain the extent of the injury to his train, the standing cars upon the side track, and the obstruction, if any, placed upon the main track, and to remove same; but the first thing he should have done, under the rules was to send out a flagman to signal the oncoming passenger train for its pro-tection.   And it appears that the conductor did not perform, or attempt to perform, any of these duties. Under this rule it was made the duty of the conductor of this freight train, under the circumstances proven, to look after the protection of the oncoming passenger

train and the condition of the track; and Judge Estill testified that if, under such circumstances, he negligently failed to do so, this would be official negligence of the vice principal, and the railroad would be responsible. In other words, the doctrine of respondeat superior would apply.

It is contended by counsel for appellant that the conductor did not know of this heavy iron being thrown upon the track, the breaking of the flat car, and the derailing of the loaded car in his train. It is true the conductor testified that he thought the collision was a very light one, and that he did not know of any of these things, and that the collision was so light that he had no reason to suspect such results. But little credence can be given this statement, when the results of the collision are considered.

As to the second proposition of appellant, we do not see how the negligent act charged and the resulting injury were too remote to hold appellant liable. The negligent act of the conductor, when acting as the vice principal, was the direct cause of his injury.

As to the third proposition, we are of the opinion, from the facts as they appear in this record, that the appellee never had any action pending in the United States court. The lower court refused to remove the cause to that court. Having the record copied and filing same with the clerk of the United States Court was appellant's own act, and not the act of the appellee in any sense, and he never undertook to prosecute the action in the United States Court, nor did he become a party thereto. His action remained in the State court.

The appellant complains that the court admitted improper and incompetent testimony in admitting the rule hereinbefore copied as evidence. It does not present any authority showing that it was incompetent, and we are of the opinion that it was competent. This court has in many cases so decided.

The fifth, and last, ground is that the verdict is excessive. The proof shows that appellee was uncon-

scious for ten hours, after the wreck; his head was split open to the bone; his right arm was broken in the joint where the arm goes into the socket; there were four places on his back which were burned by the rods of the engine; his left leg was punctured, the muscles being torn for ten inches in length; one of his ears was torn half off; his nose was cut open; cinders were ground into his forehead and face, and are still under the skin, clearly to be seen, giving it a bluish appearance; he lost the use of his right arm, and it had dropped an inch and a half from the socket at the shoulder; his spine is permanently injured, causing a condition like creeping paralysis; he is unable to turn his head without at the same time turning his whole body; he is unable to control the action of his kidneys; he has been reduced in weight thirty pounds, and is a wreck of his former physical manhood, and unable to perform any manual labor. It is true the testimony of the appellant tended to contradict the extent and permanency of the injuries, but the jury had the appellee and all the witnesses before them; and, if the appellee was injured to the extent testified to by himself and his witnesses, the verdict of the jury was not too large, considering the fact that at the time he was injured he was only thirty-three years old, and in sound, robust health.

The instructions given by the court were not objected or excepted to by either party, and in fact there is no serious complaint made of them. The court properly refused the instructions offered by the appellant, as all that was proper in them was embodied in the instructions given.

For these reasons, the judgment of the lower court is affirmed.