CASE 46—ACTION BY SALLIE GRIMES' ADMINISTRATOR AGAINST THE WESTERN & SOUTHERN LIFE INSURANCE COMPANY ON A POLICY ISSUED TO PLAINTIFF'S INTESTATE.—May 12, 1910.

# Western & Southern Life Ins. Co. v. Grimes' Admr.

Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

THOS. R. GORDON, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

Insurance—Life Insurance—Validity—Beneficiary Without Insurable Interest.—One having no insurable interest cannot take out life insurance even with consent of insured, and even if he does the law will not enforce the contract, because against public policy, and a policy taken out by insured for such a beneficiary and continued in force by the beneficiary's husband after it has been repudiated, abandoned, and dropped by insured, is void.

JAMES QUARLES and JOHNSON & LEVY for appellant.

BRADFORD WEBSTER, SAMUEL L. TRUSTY, J. REGINALD CLEMENTS and POPHAM WEBSTER & TRUSTY for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

On January 19, 1906, Sallie Grimes, a girl about 18 years old, in the employ of Jacob Gross, in the city of Louisville, took out a policy of insurance on her life in the Western & Southern Life Insurance Company, and named Dora Gross, wife of her employer, as beneficiary. She had been living in the family for

about three years, and previous to that time had been living with the mother of Mrs. Gross since she was about 5 years old. She was evidently warmly attached to Mrs. Gross, and, although working for wages, was treated as one of the family. After the policy was delivered to her, she paid the premiums regularly each week out of her wages until some time in the fall of 1907, when she ceased to work for the Gross family, and sought employment elsewhere. When she left the Gross home, she took with her the policy and the book in which the entries of her weekly payments were kept. Shortly thereafter the collector for the company called at the Gross home, as was his custom, to collect the premium. He was then informed by Mr. Gross that the insured no longer lived there, and directed where he would likely find her. The agent looked her up and was informed by her that she no longer desired to keep the policy in force and would not pay the premiums. Thereupon he returned to see Mr. Gross in an effort to induce him to pay the premiums and keep up the policy on account of his wife, who was named as beneficiary. After some deliberation this suggestion was adopted, and it was agreed between Gross and the agent of the company that the company would furnish a duplicate policy to be held by Gross, so that he would have something to show for the money which he was paying. This was in time done, and under this agreement and arrangement the premiums were regularly paid by Gross for his wife until in the fall of 1908, when the insured died. Proofs of loss were made out by Gross and delivered to the company, and a few days thereafter the company paid to him for his wife the full amount of the policy, to-wit, $275.40. In due time an administrator was appointed for her, and through

his attorney he demanded payment of the policy of the company. This was refused, upon the idea that Mrs. Gross, the named beneficiary, was lawfully entitled to the proceeds of the policy, and the company, having paid her, declined to pay the administrator. Thereupon this suit was instituted upon the original policy; the duplicate which was in the possession of Mrs. Gross having been surrendered to the company without ever having been in the possession of the insured. The company defended upon two grounds: First, it denied that it had denied payment or refused to pay the lawful beneficiary; and, second, it pleaded the payment to Mrs. Gross as foster mother under the belief that she had an insurable interest in the life of deceased and as she was named as beneficiary in the policy. It asked that Mrs. Gross be made to pay and compelled to respond to any judgment that might be rendered against it. Later defendant sought to have a rule issued against Mrs. Gross requiring her to pay the money which she had received from it into court. The court refused to issue this rule, and upon defendant's motion its cross-petition, as to Mrs. Gross, was dismissed without prejudice. Issue was joined upon the question of liability, the case prepared, and finally submitted to the court, without the intervention of a jury, for judgment upon the pleadings, exhibits, and proof. The court was of opinion that the contract sued on was a binding obligation on the part of the company, that Dora Gross had no insurable interest in the life of the insured, that the company knew this when it paid her the proceeds of the policy, and that such payment did not discharge its obligation to the lawful claimant. Accordingly, judgment was entered in favor of plaintiff, and the company appeals.

Several grounds are relied upon for reversal, but we will consider only such as, from the conclusion which we have reached, are material and vital to the determination of the case. In Hess' Adm'r v. Segenfelter, 127 Ky. 348, 105 S. W. 476, 32 Ky. Law Rep. 225, 14 L. R. A. (N. S.) 1172, 128 Am. St. Rep. 343, and Rupp v. West Indemnity Co. (decided April 26, 1910) 127 S. W. 490, it is held that one having no insurable interest whatever in the life of the insured may be made the beneficiary in a policy where it is applied for by the insured free from any influence exercised by the named beneficiary over the insured to have the insurance taken, and where the premiums are thereafter paid by the insured. As the policy in the case under consideration is shown to have been issued to the insured at her request and without the knowledge of Mrs. Gross, and the premiums were paid thereon by the insured up to the time of her quitting the employ of Mr. Gross, Mrs. Gross, the beneficiary named therein, was clearly entitled to receive the proceeds of this policy, unless the acts and conduct of Mr. Gross, as husband and agent of his wife, coupled with those of the agent for the company, in having the duplicate policy issued and the premiums thereon paid by Mrs. Gross, or Mr. Gross for Mrs. Gross, after it had become known to them that the insured did not intend to continue the policy longer in force, operated to bring this case within the rule announced in Bromley's Adm'r v. Washington Life Insurance Co., 122 Ky. 402, 92 S. W. 17, 28 Ky. Law Rep. 1300, 5 L. R. A. (N. S.) 747, 121 Am. St. Rep. 467, wherein it is held that a contract of insurance, procured by one upon the life of another in which he has no insurable interest, will not be enforced as against public policy. In that case the insurance was

procured through the efforts of Bates, the named beneficiary, and the premiums were all paid by him. After the death of the insured a dispute arose between the administrator of Bromley and Bates as to who was entitled to the money on the policies. The administrator sued the company, and the company pleaded the facts, showing how the policies had been procured and issued, and that Bates had no insurable interest in the life of Bromley. The lower court held the policies void, and, in reviewing the case here, this court said: ''The proof shows clearly that Bates had no insurable interest in the life of Bromley, and while the assignment on the policies is dated March 25, 1901, the proof is clear that the policies were taken out by Bromley for the purpose of assigning them to Bates, under the arrangement that Bates was to pay him $75 for them and pay the premiums. In other words, the arrangement was simply that Bromley was to get $75 for having his life insured for Bates' benefit; Bates to pay the premiums on the policies. It is conceded that if the policies under this arrangement had been made payable to Bates they would have been void, as he had no insurable interest in the life of Bromley. But it is insisted that, as they were made payable to Bromley's estate and were assigned by him to Bates, only the assignment is void, and that his administrator may recover of the insurance company. There would be force in this, if the policies had been delivered to Bromley and the assignment to Bates had been a subsequent and independent transaction. But the proof leaves no doubt that Bromley did not contemplate insuring his life for the benefit of his estate at any time. He contemplated simply getting $75 out of the arrangement. The policies were never intended to be delivered to

Bromley. Bates was to pay the premiums and get the policies. The policies did not become effective until the first premium was paid. Bates paid the premium upon the idea that the policies were to be assigned to him, and for this reason they were left in the hands of the insurance agent until the assignment was made; the delay in closing up the matter being due to the fact that the parties had to wait for the second policy to come. To hold such an arrangement good would be to shut our eyes to the truth and to enforce a mere form. The law does not allow one who has no insurable interest in the life of another, to insure it for his benefit, for the reason that it is a mere wager and holds out a temptation to fraud; the insurer having no interest in the life of the assured and having a direct interest in his death.''

In the case under consideration, the insured, after carrying the policy for something over a year, notified both the beneficiary named therein and the agent of the company that she would no longer continue the policy. They each understood that she intended to lapse or drop it. Her relations with the Gross family had changed. She was no longer in their employ, and the inducement for her to keep up the policy was wanting. Although possessed of the knowledge that the insured would make no more payments on the policy, the agent of the company set about to induce Mr. and Mrs. Gross to take up the payment of the premiums and continue the policy in force, in order that Mrs. Gross might get the money. Gross, acting upon this suggestion of the agent, paid the premiums thereafter until the death of the insured. On an application purporting to have been signed by the insured, though not satisfactorily shown to have been so signed, the company issued a duplicate policy,

which was held by Gross.  This was done at the in-
stance of Gross that he might have something to show
for the money which he was paying out.  The whole
business, in every particular, was engineered and con-
trolled by the husband of the named beneficiary, act-
ing for his wife, and the agent of the company, with-
out the knowledge, acquiescence, or consent of the in-
sured.  Where one has no insurable interest in the life
of another, the law will not permit him to take out in-
surance on such life, and, if he does so, will not lend
its aid to the enforcement of such contract because
against public policy, and the fact that the insured
lends his consent to the transaction adds nothing
whatever to its validity.  So it becomes immaterial,
for the purposes of the case under consideration,
whether or not the insured consented to the issual of
the duplicate policy.  And certainly, if validity could
not be given to the contract with her consent, there
would be less merit in the claim if the transaction was
done without her knowledge or consent.  This case
cannot be distinguished in principle from the Brom-
ley Case.  No distinction can be drawn between tak-
ing out a policy with the consent of the insured and
continuing one in force after it has been repudiated,
abandoned, and dropped by the insured.  In fact,
there is less of merit in the case under consideration
than there was in the Bromley Case, for Bromley
really received $75 in cash as an inducement to enter
into the arrangement; whereas, under the most favor-
able light in which the present case can be considered,
the insured merely consented that Mrs. Gross might
carry the insurance on her life.  The contract is void
and unenforceable as against public policy; and this
applies alike to the representative of the insured and
the beneficiary named in the original policy.

Of this finding appellee is in no position to complain, for he occupies no better position than the insured—stands in her stead—and she elected to drop the policy, and by nonpayment of dues caused it to lapse. Having accomplished her purpose and lapsed the policy, she could not thereafter successfully claim that the policy was alive and in force by virtue of the act of Mrs. Gross in making payments to the company, for these payments were made, not for the benefit of the insured, or at her instance or request, but solely for the purpose of keeping the insurance in force for the benefit of Mrs. Gross.

Upon this showing the chancellor should have held that the contract of insurance was absolutely void as to all parties concerned, and for his failure so to do the judgment is reversed, and cause remanded, with instructions to dismiss the petition.