## Metropolitan Life Insurance Company v. Nelson, et al.

(Decided June 8, 1916.)

Appeal from Jefferson Circuit Court
(Common Pleas Division No. 1).

1. Insurance—Life Insurance—Insurable Interest—Beneficiaries.—In ordinary life insurance no one without an insurable interest in the life of the assured may be the beneficiary of the proceeds of the policy and the relationship of aunt and nephew does not constitute such insurable interest in the one or the other so as to entitle either of them to take out insurance on the life of the other.

2. Insurance—Industrial Insurance.—This rule, however, does not apply to the more modern character of insurance called "industrial insurance," which consists of policies of small size and small weekly premiums and has for its purpose the provision of funds by which the insured may defray the expenses of care and attention in his last sickness and provide for burial and funeral expenses, as this class of insurance has none of the features of a wagering contract. It is therefore, competent for the insurance company to provide in such policies that payment shall be made to the one incurring such expenses and to be discharged by the payment of the insurance to such persons.

CLARENCE SMITH and KEITH L. BULLITT for appellant.

L. FRANK WITHERS and L. A. HICKMAN for appellees.

Opinion of the Court by Judge Thomas—Reversing.

The appellant, Metropolitan Life Insurance Co., who was defendant below, on March 4, 1912, insured the life of Abraham Nelson by issuing to him what is called in this record an industrial policy. The premiums agreed to be paid were twenty-five cents per week. The sum to be paid to his beneficiary, or the person named in the clause, which we shall hereafter consider, was $385.00, provided the insured died six months after the delivery

of the policy and the policy should be in force at the time of his death; but only one-half that amount was to be paid upon his death if it should occur within six months after issuing the policy.  The insured at the time was 28 years of age, and he had some years before married the appellee, Elnora Nelson, who was plaintiff below; but under the proof she abandoned him in 1909 and continued separated from him until his death, which occurred some time in February, 1914.  The beneficiary named in the policy at the time it was issued was Lizzie Nelson, the mother of the insured, but some time about Thanksgiving day in 1913, she died.  At that time the insured, Abraham Nelson, was living with his mother, they being the only members of the family.  For a considerable time previous to the death of his mother, the insured had been afflicted with a disease which had culminated into what is commonly known as dropsy. This had produced considerable swelling of different parts of the body, and especially of the lower limbs. The history of this affliction, for it is not called a disease, is that sooner or later it entirely disables the patient from doing anything, not even attending to his immediate necessities and rendering him completely helpless.

After the death of his mother, there was no one left at the home of the insured to nurse or take care of him, and he determined to move to the house of his aunt, Maria Fields, who was his mother's sister.  She lived but a short distance from the home of the insured, and she appears from this record to have been very much attached to him, having assisted in nursing him before his mother's death, and she gladly received the suggestion that the insured should move to her house, and was willing to assume the task of rendering to him all the services of which she was capable, which she seems to have faithfully done.  Shortly after the death of the mother, who, as we have seen, was the named beneficiary in the policy, the insured, voluntarily, as is shown by the record, caused his aunt, Maria Fields, to be substituted as beneficiary in the policy in lieu of his deceased mother.  After the death of the insured, and upon proof thereof, the company paid to the aunt the amount due under the policy.  Shortly after this the appellee, Elnora Nelson, claiming to have the right to administer upon the estate of the insured, was appointed adminis-

tratrix of his estate, and filed this suit against the defendant company, claiming the right to recover the proceeds of the policy as such administratrix, because she was his widow, and further alleging that the original beneficiary, Lizzie Nelson, left no heirs except Abraham Nelson, the insured, and that he inherited the proceeds of the policy from his mother, and because of this fact, she claimed to have the right as such personal representative to maintain the suit. It was further claimed by her in her petition that at the time her deceased husband designated his aunt as beneficiary in the policy, his mind was so enfeebled that he was mentally incapacitated to do so, but that if this was not true, that Maria Fields did not, under the law of this state, have an insurable interest in the life of her nephew, and could not, therefore, collect the proceeds of the policy, and the payment which the company made to her was, therefore, illegal and void. The defendant denied the allegations of the petition, and insisted that in this character of insurance the strict rule of the law requiring the beneficiary to have an insurable interest in the life of the insured, did not apply because of the entirely different purposes between this character of insurance and ordinary life insurance; and relied upon the following clause in the policy:

"In case of such prior death of the insured the company may pay the amount due under this policy to either the beneficiary named below or to the executor or administrator, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this policy have been satisfied."

After the evidence was introduced, which wholly failed to sustain the allegation as to mental incapacity of the insured, the court gave a peremptory instruction directing the jury to find for the plaintiff, which was done and a judgment rendered accordingly. The company has filed a transcript of the record in this court and entered motion that it be granted an appeal from the judgment.

It is the settled rule. everywhere and has been for a century or more, that one who had no insurable interest in the life of another could not be the beneficiary in a policy issued upon his life, nor could such beneficiary collect the insurance upon the happening of the contingency insured against. The reason for this universal and long-standing rule is, that to hold otherwise would be in violation of a sound public policy, in that if the beneficiary could collect the insurance, without having an insurable interest in the life of the deceased, inducements would be offered for the beneficiary to cause, bring about, or produce, the death of the insured so that the former could reap the benefit of the insurance. This rule as to insurable interest applies with equal force after the policy is issued and the beneficiary is changed by assignment or otherwise, as it does to the naming of the beneficiary at the time of the procuring of the insurance. Some of the Kentucky cases upholding the rule are: Smith v. Agnew, 137 Ky. 83; Hess' Admr. v. Segenfelter, 127 Ky. 348; Western & Southern Life Ins. Co. v. Grimes' Admr., 138 Ky. 338; Bramblett v. Hargis' Executrix, 133 Ky. 141; Irons v. U. S. Life Ins. Co., 128 Ky. 640; Equitable Life Assurance Society v. O'Connor's Admr., 162 Ky. 262; Basye v. Adams, 81 Ky. 368; N. Y. Life Ins. Co. v. Brown, 23 Ky. Law Rep. 2070.

The trial court followed the doctrine of these cases in rendering the judgment appealed from.

It could serve no useful purpose here to point out those whom the courts have held to possess an insurable interest in the life of another, further than to say that this court has held that an aunt, because of her blood relationship alone, has no insurable interest in the life of her nephew. Equitable Life Assurance Society v. O'Connor's Admr., 162 Ky. 262; Hess' Admr. v. Segenfelter, 127 Ky. 348; Woods v. Woods, &c., 130 Ky. 162.

It is, however, universally held that a creditor to the extent of his debt has an insurable interest in the life of his debtor. The right of Maria Fields, however, to collect this insurance is not sought to be upheld because of any relationship as creditor for services which she rendered to the insured, although such services as we find from the record she did render, coupled with the physician's bills and burial expenses which she paid, might have been more than sufficient to have consumed

this policy. As this is not relied upon, the only question to be considered is, whether the payment to Maria Fields of the proceeds of this policy can be justified under the quoted clause therefrom. In other words, shall we draw a distinction between ordinary life insurance and that which we have here?

As we have seen, it is insisted that the character of insurance with which we are dealing is what is known as "industrial insurance." Whatever that may mean we find it defined in volume two, second series of Words and Phrases, to be: " 'Industrial insurance' means small policies issued in consideration of weekly payments in contradistinction to the ordinary insurance, where premiums are payable annually, semi-annually, or quarterly." The purpose of this character of insurance seems to have for its object, not the creation of a fund to provide for the future support and maintenance of the family or near relatives of the insured having an insurable interest in his life, or to augment his estate, as ordinary life insurance does; but to provide a reasonable fund with which the insured may procure in his last sickness, which in many cases may be lingering in character, needed aid and assistance by way of nursing and medical attention, etc., and to secure respectable and decent burial. When limited in amount to a reasonable provision for these purposes, the plan, as we view it, is to be commended rather than discouraged. It is the impecunious only who would need such a fund for such purposes and such expenses, if not thus provided, would doubtless have to be furnished through the instrumentality of some charity maintained either by public or private donations. It would seem then, that when this character of insurance is limited strictly within the confines of the purposes stated, to permit it to be issued and paid as provided by the clause, *supra,* would foster rather than impair the public policy of the state.

In such cases the reason for the rule as applicable to ordinary life insurance concerning the feature of the contract now under consideration, does not exist, or, to say the least of it, is largely removed for the manifest reason that the size of the policy is not sufficient to render it probable that any sum would remain after applying the proceeds to the purposes stated, but, if so, it would be so insignificant as to offer no temptation to

commit murder. Furthermore, no one would know beforehand whether or not he would be the payee of the proceeds of the policy, as in all of them there is a clause of the character quoted, which is called "the facility of payment" clause and the expenses provided for are largely incurred after the death of the insured. This character of insurance presenting the question now under consideration, has never been before this court so far as we are able to learn, but has been under consideration by the courts of Massachusetts, Pennsylvania and New Jersey in the cases of Bradley v. Prudential Insurance Co., 72 N. E. 989; 187 Mass. 226; Thomas v. Prudential Insurance Co., 24 Atl. R. 82; 148 Penn. St. 594; and Metropolitan Life Ins. Co. v. Schaffer, 11 Atl. Rep. 154; 50 N. J. L. 72.

In the Bradley case the equities of the person to whom the insurance was paid were not so favorable as those possessed by Maria Fields in this case. But the court in upholding the right of the company to pay to him the insurance, and giving its approval to the "facility of payment" clause in this character of insurance, after reciting the clause in that policy, which is substantially the same as the one we have here, said:

"Such stipulations are common in industrial policies, the amounts of which always are small; and one purpose of them is to enable the amount of the policy to be paid very speedily after the death of the insured, without the delay or expense of taking out administration, and another purpose is to remove the chance of litigation between claimants. The insurance being taken out by the person whose life is insured, and the person to whom the policy is paid under the provisions of such articles (facility of payment clause) being either a relative or in the position of a creditor, we see no ground for holding such an article void as against public policy. In effect, the article gives the company power, acting in good faith, to discharge its debt and perform its contract by making payment to any person who is a relative by blood or marriage of the insured, or who has incurred expense for the insured."

In the Schaffer case, after reciting the terms of the policy, etc., the Supreme Court of New Jersey, said:

"The company has paid, in strict accordance with that condition, and is thereby discharged, under its express terms, from further liability. The purpose and ob-

ject of this kind of insurance seem to require the payment to be made in that way, and it should, in good policy, be upheld.

"Unlike the ordinary life insurance, small sums are provided by these industrial policies, to be paid at once on proof of death and surrender of policy. Suit may be brought on it in ten days thereafter, and must be brought within six months from the date of the death of the assured. The terms and manner of the insurance contemplate speedy payment to the family of the assured, immediately after his death, to provide a burial fund, or to meet the expenses which in such an emergency must be incurred."

The policy involved in the Thomas case from the Supreme Court of Pennsylvania contained a clause almost identical with the one found in the policy now under consideration, and payment was made as in the Bradley case to one having no insurable interest in the life of the insured, and the court upheld the payment and adjudged the "facility of payment" clause in this character of insurance policies to be valid, saying:

"So far as we can gather from the case before us it will appear to be to insure its members to the extent of a small sum of money (in this case it was $60.00, and the weekly payment, five cents), in order to provide the means for any necessary expenses in the last sickness or death of the assured. The manifest object of the second schedule of the policy, which I have quoted, was to enable the company, in case of the death of the assured, to pay the amount of the policy without the expense of an administration * * *. The contract itself does not offend against any rule of law or public policy; and we can not hold that the administrator is entitled to recover without making a new contract for the parties."

Under the doctrine of these cases, within prescribed limitations, industrial policies of the character we now have before us seem to be taken out of the rule forbidding none but those having insurable interest from becoming beneficiaries in life insurance contracts or collecting the insurance after the death of the assured. Considering the purpose in view and the benefits to be accomplished, together with the consequent relieving of the public of such burdens, we are not disposed to dissent from the holding of the courts referred to. On the

contrary, it is our conclusion that an adherence to them violates no public policy; and that the reason for the rule requiring an insurable interest in the life of the assured by the beneficiary does not exist in this character of insurance.

We do not mean to be understood that the well-established rule on the subject may be set aside or ignored or evaded under the pretense of effecting "industrial insurance," but when the policy is clearly of that character, and the size of the policy is not beyond a sum reasonably sufficient to accomplish the purposes intended, and good faith is shown by the parties concerned, we see no reason why the contract should not be enforced; especially when the one receiving payment is related by blood to the assured and exhibits a course of conduct demonstrative of good faith as did Maria Fields in this case.

The business of insurance is gradually expanding and the contingencies provided against and risks assumed by the insurer are constantly increasing. Each time a new field is covered its beneficial results to the people have been demonstrated. We believe the character of insurance now under consideration, if confined to the attainment of the end in view, will not prove to be an exception to past experience. We are, therefore, unwilling to apply to strictly "industrial insurance," as herein defined, the same rule as to requirement of insurable interest of the beneficiary in the life of the assured, as prevails in ordinary life insurance which has for its object more of the features of a bonus than of charity.

We, therefore, conclude that the court was in error when he instructed the jury to find for the plaintiff.

The motion for the appeal is sustained and the appeal granted, and the judgment reversed for proceedings consistent with this opinion.

Whole court sitting.