No. 23,397.

WALTER WILSON, *Appellant,* v. THE METROPOLITAN LIFE INSURANCE COMPANY et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. PRUDENTIAL INSURANCE—*Proceeds of Policy Paid to Changed Beneficiary— Company Absolved from Further Liability.* Under the terms of the policy of prudential insurance involved herein it is held that the insurer absolved itself from liability to all others by paying the proceeds of the policy to the changed beneficiary.

2. SAME—*Party Entitled to Proceeds of Policy.* The settlement in good faith with such beneficiary on proof which caused the company to deem him entitled to such proceeds and his receipt, constituted conclusive evidence that all claims under the policy had been satisfied.

3. SAME—*Demurrer to Plaintiff's Evidence Properly Sustained.* Under the pleadings and the evidence introduced by the plaintiff it was shown that the plaintiff could not recover, and no error was committed by sustaining the demurrers of the defendants to such evidence.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed January 7, 1922. Affirmed.

*William Dill, Dennis Jones,* and *Jesse A. Hall,* all of Leavenworth, for the appellant.

*Benjamin F. Endres,* and *Floyd E. Harper,* both of Leavenworth, for the appellees.

The opinion of the court was delivered by

WEST, J.: The defendant company issued to Robert Hill a policy of insurance payable upon his death to his wife, Ida Hill. She died in October, 1917. Robert Hill died on January 4, 1918. The pe-

tition alleged that about the time of the wife's death, the plaintiff, Walter Wilson, at the request of Robert Hill, went to his house, nursed and took care of him until his death, bought food and medicine necessary for him during his last illness, and at his request paid the company in the month of October, 1917, $2.50, which its agent informed him was necessary to reinstate the policy; that afterwards he paid all the premiums required by the terms of the policy up to the death of Robert Hill. He alleged that this was done at the request of Hill on the distinct promise that he would make him the beneficiary of the policy, and that Hill delivered the policy to him, and that the agent, Rex A. Parsons, receipted for the payments made by him on account of premiums. That Parsons told him it would be necessary that the policy and receipt books be sent to the company, assuring him the policy would be reinstated and they would be returned to him, and he relied upon the truth of that statement and delivered the policy to Parsons as agent of the company. About April 1, 1918, Parsons told this plaintiff that the company had caused the policy to become lapsed, and that some time after the death of Hill and without the knowledge of the plaintiff and without any authority, the defendant Schwinn wrongfully and fraudulently made claim for the amount due on the policy, and the company fraudulently and for the purpose of defrauding the plaintiff paid Schwinn $336.50, the amount then due, to the plaintiff's damage in that amount.

The company answered that the policy provided among other things:

"In case of such prior death of the insured the Company may pay the amount due under this policy to either the beneficiary named below or to the executor or administrator, husband or wife, or any relative by blood or connection by marriage, of the insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial; and a production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this policy have been satisfied."

That in December, 1917, Robert Hill requested the name of the beneficiary changed from Ida Hill to Adam Schwinn, in accordance with which request the change was so made and the change was set forth by copy, signed by the insured, his signature witnessed by R. A. Parsons who was secretary of the company. Further, that upon the death of Hill, the defendant Schwinn submitted proof thereof—

"At the same time the said Adam Schwinn surrendered said policy of life insurance . . . that during the life of the said Hill the insured named in said policy, said Schwinn incurred expense on his, said Robert Hill's, behalf and thereby became his, said Robert Hill's, creditor to the amount of $345.45; said Adam Schwinn, appearing to this answering defendant be equitably entitled to the amount due on said policy the said Metropolitan Life Insurance Company, defendant herein, paid said Adam Schwinn the sum of $336.50 on February 21, 1918, in accordance with the terms and conditions of said policy and the written application therefor in full and complete settlement thereof, and in full for all claims existing under said policy of life insurance.",

The plaintiff filed a verified reply to the amended answer of the company specifically denying the allegation that Robert Hill requested the change of beneficiary or signed a paper purporting to be such request.

At the close of the plaintiff's evidence the defendants filed demurrers thereto, which were sustained and the jury discharged.

The plaintiff testified among other things that Robert Hill was his brother-in-law and that he took care of him until his death; that he was present when Hill requested Parsons to change the name of beneficiary from Ida Hill to Walter Wilson and saw Hill make his mark after Parsons had written his name on the paper changing the names; that several days thereafter Parsons took the policy and receipt books for the purpose of changing the beneficiary's name on the policy, and came back to the home of Hill and said the policy had lapsed and he could not have it revived, and gave back to the plaintiff all the money he had paid and took up the receipts. He testified that the reason he did not file proof of death was because Parsons had told him the policy was lost and lapsed and could not be revived; that Schwinn made affidavit that he paid the funeral expenses, the doctor bills and the premiums. It was testified also that the funeral expenses were paid by a detachment of soldiers at Fort Leavenworth, and this was admitted by defendants in open court.

Julia Banks testified to having heard Robert Hill tell Parsons that he wanted the policy made to Walter Wilson.

Alice Williams testified that Robert Hill said the only thing he had to leave Wilson for his kindness to him was the policy.

Oda Reed testified that Parsons said the policy could not be revived, and she heard Hill say he wanted Wilson, his brother-in-law, to have the policy because Wilson had taken care of him and cooked for him and washed for him and cleaned up the house and kept it clean.

Dr. Moates testified that he attended Hill at the request of Wilson and never received any compensation for his services.

During the trial, counsel for the company admitted that so far as he knew, Schwinn did not claim to have paid the funeral expenses, and stated to the jury that detachment No. 2 paid $71 funeral expenses.

The plaintiff testified that Hill did not owe Schwinn anything for groceries that he knew of and that he knew he did not pay the funeral expenses or give Hill any money; that before the beginning of this suit he saw the local superintendent, Lord, at his office, who went with Parsons into the private office, and when they came out he said that Schwinn had made affidavit and that the policy was paid to the right man.

This is a case involving prudential insurance—intended in a general way to provide for the expenses of last sickness and burial. All the company contracted to do in case of the insured's death was to pay the amount to the beneficiary named or to the executor or administrator or to any person appearing to the company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured or for his burial. It was also a very plain part of the contract that the production of a receipt signed by any one of such named persons should be conclusive evidence that all claims under the policy had been satisfied. It was not a contract to pay to the person who had provided for medical and funeral expenses. It was not even one to pay to the person actually entitled to it, but simply an agreement to pay to any one appearing to the company to be equitably entitled by reason of having incurred expenses on behalf of the insured or for his burial. We find nothing in the record to indicate that the company did not find and believe Schwinn to be equitably entitled under the provisions of the policy to expenses incurred by him on behalf of Hill.

Counsel point out that the petition charged that Parsons was agent of the company and duly authorized to do all the things which it was alleged he did. These were that he requested Wilson to pay the delinquent premiums, informing him that this would reinstate the policy; that Parsons receipted for such premiums, and told him it was necessary to deliver to him, Parsons, the policy and premium receipt books, assuring him that the policy would be reinstated by the company, and the receipt books returned to him showing the policy revived and in full force, but that afterwards

Parsons told plaintiff the company had caused the policy to become lapsed, that it was not in force, and the company denied liability. These allegations not being denied under oath, counsel say must be taken as true. "There is, therefore, conclusive proof that the company did not pay Schwinn in good faith."

What these admitted allegations seem to show is that the agent made some statements and promises before he learned that the policy had been paid to Schwinn. At most they would amount only to a cause of action for failure to reinstate. But suppose the policy had lapsed and had been reinstated. It would not have been paid to Wilson as beneficiary, but to Schwinn, for there is no allegation or proof that Wilson was ever made or promised by the company to be made beneficiary. Hence, all these admitted allegations hardly go to show bad faith in paying Schwinn, for it appears that Schwinn had been made beneficiary and had the policy and satisfied the company that he was entitled to the proceeds.

The verified reply denied that Hill requested Schwinn to be made the beneficiary and denied that he signed the request set up in the answer. But the trouble is that in the course of the plaintiff's evidence it fully and clearly appeared that the company had deemed Schwinn entitled, had paid him, and that he had the policy and the witnessed written request of Hill that he be made beneficiary. We fail to see how the evidence of the agent Parsons' statements and conduct fairly raised any question as to the good faith of the company in settling with Schwinn.

There was nothing to indicate that Hill had not signed the request for change of beneficiary, or that Schwinn did not have the policy and had not been made beneficiary or had not in fact convinced the company of his right to the proceeds. The nearest approach to bad faith is the story of Wilson about Parsons's representations, but taking that all as true, it could not furnish a cause to undo what the company did when it settled with the substituted beneficiary.

Suppose the beneficiary had not been changed, and no attempt or request had been made for a change under the provisions of the contract embraced in the policy, the company would have had the right to pay any one "appearing to said company to be equitably entitled to the same by reason of having incurred expenses on behalf of the insured, or for his or her burial"; and "a production of a receipt signed by either of said persons" would, under the terms

of the contract, "be conclusive evidence that all claims under this policy have (had) been satisfied."

This form of insurance has frequently been before the courts and in several cases the precise language of this policy has been considered. The effect of such contract is therefore quite well settled. Without quoting at length it is deemed sufficient to refer to the following authorities: *Metropolitan Life Ins. Co. v. Schaffer,* 50 N. J. L. 72; *Chance v. Metropolitan Life Ins. Co.,* 147 Ga. 396, holding squarely that under this provision "the acceptance of the check by the payee and the payment of the same by the insurance company will operate as a complete discharge of the company from its obligation as insurer under the terms of the contract" (syl.); *Kelly v. Insurance Co.,* 148 Mo. App. 249; *Brooks v. Metropolitan Life Ins. Co.,* 70 N. J. L. 36; *Lewis v. Metropolitan Life Ins. Co.,* 178 Mass. 52; *Fitzgerald v. Balto. L. Ins. Co.,* 133 Md. 619; *Metropolitan Life Ins. Co. v. Nelson,* 170 Ky. 674. In this case it was held that "it is therefore, competent for the insurance company to provide in such policies that payment shall be made to the one incurring such expenses and to be discharged by the payment of the insurance to such persons." (Syl. 2.)

The judgment is affirmed.