## Krumphorn v. John Hancock Mut. Life Ins. Co.

(Decided Jan. 25, 1938.)

C. B. SHIMER and F. J. HANLON for appellant.
JOHN J. HOWE and BRUCE & BULLITT for appellee.
THOMAS LOGAN and E. PURCELL for Kort's Adm'r.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

On different dates, beginning May 15, 1915, the John Hancock Mutual Life Insurance Company, hereinafter designated as the company, issued four life

insurance policies to Charles Kort in sums of $286, $348, $260, and $100, respectively. Either in the policies when issued or by indorsement thereon and in conformity with the provisions thereof, Effie Kort, to whom the insured was married after the first policy was issued, was named or designated as beneficiary.

On September 30, 1930, Charles Kort, because of disability, gave up his employment as chef in a restaurant and on January 26, 1931, was adjudged to be of unsound mind and committed to the Central Insane Asylum at Lakeland, Ky., where he remained until his death on March 13, 1935. His wife, the designated beneficiary, had previously died on February 20, 1932. After the death of insured, Hazel Krumphorn, a daughter of Effie Kort by a former marriage, delivered the four policies and the premium receipt books to a local agent of the company, made proof of the death of the insured, and requested that a check for the proceeds of the policy be made to her.

On July 19, 1935, Thomas M. Logan was appointed and duly qualified as administrator of the estate of Charles Kort and upon his demand as such the company issued to him a check covering the proceeds of all the policies which, including dividends, or other accumulations, amounted to $1,005.07.

On July 20, 1935, Hazel Krumphorn instituted this action against the company seeking to recover the proceeds of all the policies. By her various pleadings she bases her right of recovery upon alleged facts which, in substance are: That when insured gave up his position he and her mother were in destitute circumstances; that she went to their home and cared for and supplied all their needs at her own expense until after her stepfather was committed to the asylum and thereafter continued to do so for her mother until the latter's death; that she paid the premiums on their life insurance policies; that the agents of the company who collected the insurance premiums promised and represented to her that if she would pay the premiums the insurance would be paid to her in the event the beneficiary predeceased insured; that when she surrendered the policies and receipt books and made proof, the company's local agents promised that the check would be made to her; that by reason of these promises and rep-

resentations on which she relied and but for which she would not have surrendered the policies, the company was estopped to assert or rely on its right to pay the proceeds of the policies to any other person.

The company made a general denial of the allegations of the petition and set up provisions in the policies to the effect that modifications, changes, or alteration could only be made by indorsement on the policy signed by designated officers and that agents had no authority to waive or extend any of the terms and conditions therein and averred that the alleged agreement that the policies or any part thereof would be paid to appellant was not made by any of the officers referred to in such provisions and was not contained in any of the policies and no agent had authority to bind the company by such agreement. It set up the terms of the policies as to how and to whom payment might be made as appears in the hereinafter quoted provision of the policies and alleged in substance that under such provision payment was made to the administrator in full satisfaction of the policies as therein provided. It made its answer a cross-petition against the administrator and alleged in substance that if plaintiff was entitled to the proceeds of the policies or any part thereof, the payment was made to the administrator under mistake of law and fact, and, if it be so adjudged, the administrator should be required to return such sums to it or to the plaintiff in satisfaction of all demands.

The administrator controverted the allegations of the cross-petition against him. Trial resulted in a directed verdict for the company, and plaintiff is appealing from a judgment entered in conformity therewith.

The only point made under heading of points and authorities accompanying brief for appellant is that the lower court erred in sustaining the company's motion for a peremptory instruction and it is argued that because of the alleged agreement of the company to pay the proceeds of the policies to appellant under the facility of payment clause after the policies had been delivered to her it made its election to pay according to such agreement and became estopped and had no right to pay the proceeds to the administrator or to any other person. As supporting such contention, the cases of Jones' Adm'r v. Prudential Insurance Company, 225

Ky. 238, 8 S. W. (2d) 412; Metropolitan Life Insurance
Company v. Nelson, 170 Ky. 674, 186 S. W.. 520, L. R. A.
1916F, 457, Ann. Cas. 1918B, 1182; Wilkinson v. Metro-
politan Life Insurance Company, 63 Mo. App. 404; Vel-
ten et al. v. Western & Southern Life Insurance Com-
pany, 256 Ky. 271, 75 S. W. (2d) 1035, are cited. All
of the policies involved contain the following provision:

"On satisfactory proof of the death of the In-
sured, made in the manner and to the extent re-
quired herein and upon surrender of the Policy and
Premium Receipt Books, the Company will pay the
amount due hereunder. The Company may make
payment either to the beneficiary above named, if
living, or to such other living beneficiary as may be
duly and finally designated, and recognized by en-
dorsement hereon, or to the Executor or Adminis-
trator of said Insured or to any relative by blood
or connection by marriage, or to any person appear-
ing to the Company to be equitably entitled thereto
by reason of having incurred expense in any way
on behalf of the Insured for burial or for any other
purpose; and the receipt of any such payee shall
be conclusive evidence that payment has been made
to the person or persons entitled thereto and that
all claims under this Policy have been fully satis-
fied."

In the cases cited by appellant, or at least in the
first three, the court had under consideration industrial
policies. The opinion in the second case cited quotes
from 2 Words and Phrases, Second Series, p. 1054, a
definition of "industrial insurance" reading:

" 'Industrial insurance' means small policies issued
in consideration of weekly payments in contradis-
tinction to the ordinary insurance, where premiums
are payable annually, semi-annually, or quarterly."

And the opinion continuing says, in substance, that
the purpose and character of this insurance is not to
provide for future support and maintenance of the ob-
ject of insured's bounty or to augment his estate as
ordinary life insurance does, but to provide a reason-
able fund to procure care for the insured in his last ill-
ness and a respectable and decent burial. The policies
involved in the cases cited contained a facility of pay-
ment clause similar to that contained in the quoted pro-

vision of the policies under consideration. Such provision was held valid and not in contravention of law or any public policy even though persons designated therein might not have insurable interest in the life of the insured. But, an examination of the opinions in those cases will reveal, as does the above-quoted provision of the policies, that it is optional with the company as to whom, within the classes designated, it will make payment and that it will be relieved of further liability by payment to any person coming within the scope and purview of the facility of payment clause, provided its option is exercised in good faith.

In the Velten Case insured had assigned her policies to a bank to secure the payment of a note upon which Velten was bound as surety, but at the time no notice was given to the insurer of the assignment. Upon the death of assured and when the bank delivered the policies to the insurer's local manager, he was acquainted with the fact and promised that the note would be paid. It was held that in such circumstances the insurance company was estopped to rely on payment made to insured's daughter under the facility of payment clause to the prejudice of the assignee of the policy. It is at once apparent that the case under consideration presents an entirely different situation. It is true that appellant had the policies in her possession, but they had merely been delivered to her by the designated beneficiary a week or so before the latter's death. There had been no assignment of the policies to appellant to secure her claim. The mere delivery of the policies to appellant by the beneficiary in itself created no right in the former.

It was the opinion of the judge who presided at the trial that the aggregate amount of the policies in controversy, which, as already indicated, was over $1,000, took the case out of the rule applied to industrial policies in the foregoing authorities and therefore the facility of payment clause did not apply; and appellant having no insurable interest in the life of her stepfather, the alleged agreement was void. Courts have uniformly held that a stepchild has no insurable interest in the life of a stepfather or stepmother unless the latter stand in loco parentis to the former. See Young v. Hipple, Ex'r, et al., 273 Pa. 439, 117 A. 185, and annotations following that case in 25 A. L. R. 1541.

While the opinion of the trial court is apparently sound, the judgment can be sustained on other grounds. There is no proof that appellant incurred any expense for the burial of insured or during his last illness or that she incurred any expense that would warrant the company to pay the proceeds of the policy to her to the exclusion of any and all other creditors, and to the heirs of insured.

In asserting that the company was bound by the alleged agreement of its agents to pay the proceeds of the policies to appellant, the cases of Henry Clay Fire Insurance Company v. Grayson County State Bank, 239 Ky. 239, 39 S. W. (2d) 482, 483, and Equitable Life Assurance Society v. Brewer, 225 Ky. 472, 9 S. W. (2d) 206, are cited. The first case related to an oral contract respecting fire insurance between an agent of the company and the insured and the latter to waiver of forfeiture for nonpayment of premiums by an agent. It is true that we have been liberal in upholding such contracts, but neither this nor any other court has ever gone so far as to hold that an insurer will be bound by any contract made by its agent with a third party or a stranger to the contract to change the beneficiary or to vary in any way the terms of the contract without the consent of the insured. It is our conclusion that in the proven circumstances it was optional with the company to whom of the designated classes it would pay the insurance provided the option was exercised in good faith and it was well within its right in making payment to the administrator. In fact, it could not in the exercise of sound judgment and good faith have done otherwise. If appellant has any just claim against the estate of decedent, she is not without recourse, but that matter is not before us, since the administrator was not made a party to the appeal.

Judgment affirmed.